22-12862, Charles Cornelius v. Rollins Ranches, LLC. Mr. Rigrish, did I pronounce it correctly? Good morning, Your Honor. Yes, Rigrish, that's correct. Thank you. And may it please the Court, I represent Rollins Ranches, LLC, which is a very large cow-calf operation. What a cow-calf operation does is breed cattle to raise calves for the meat industry. And the Rollins Ranch in Florida is over 50,000 acres spread over multiple counties, primarily in the Indian River, but some in Okeechobee. And if you drive north on the turnpike past Yeehaw Junction and look right, between 441 and Invero Beach, most of that is the Rollins Ranch operation. This is north of 60, so it kind of captures a lot of that. Mr. Cornelius, the plaintiff below, Appellee and Cross Appellant here, was engaged as an independent contractor by Rollins Ranches from the middle of 2017 until October of 2020. When he started employment, he executed forms that acknowledged that status, including- The client never signed, just to be clear, correct? But Mr. Cornelius did and admitted to them. And Mr. Cornelius also signed, which an employer is not required to sign, a W-9 form, the tax form establishing that he was an independent contractor. And Rollins Ranches, relying upon that, did not withhold taxes, FECA, Social Security from the pay that it issued to him on 1099 forms. You have a number of facts in the record which, in my view, permitted a fact finder to rule in your favor that Mr. Cornelius was an independent contractor. The question is whether or not the evidence in your favor was so overwhelming that no reasonable jury could have concluded otherwise. And that's where I think you might have an issue because the standard is difficult for you. I acknowledge that the judgment is a matter of law standard, which this court reviews de novo on the legal issue. And again, it's not a pure fact issue. Some of the underlying facts are fact issues. But you have to view those facts in the light most favorable to the non-moving party. You do. And the key facts here are, and the only fact that goes in Mr. Cornelius' favor on this, is his post-engagement assertion that he was required to sign those documents that Judge Abudu referred to. I don't know about that. I don't know about that because when I was reading the evidence, I mean, it seemed like the way that this relationship was described, what he was actually doing on a day-to-day basis was what an employee would do and not what an independent contractor would do. It could be either, Your Honor. It could be either. Oh, okay. Carpenters are engaged as independent contractors. No, no. And that's not what I mean. Frequently. I don't mean just the fact he was a carpenter. I mean, this was his only job, right? He didn't work for anybody else during this period. He chose not to. Yeah, so he didn't work for anybody else. This is his sole source of income. He was, he reported to work and reported to someone on the property, right? And was given assignments. Yeah. Yeah. And so, I mean, it seems very much, I mean, I get, you know, you've got some facts that support you, but if you just look at what he was doing on a day-to-day basis, it seems like he was an employee. He kept timesheets, right? Well, he was paid on the basis of his claimed time, which he reported what he was doing in detail. Right. So this isn't a situation, for example, where he was paid by the job or something like that? No, but the key point here is, and this goes to one of the factors that this Court has described in the Scantlin case, which the parties referenced, which is the first is, which is control as to manner in which the work is to be performed. And that control was not exercised. And the key testimony and evidence on that. I don't know that, I mean, I get your point on that, but correct me if I'm wrong, I mean, that's not about just having like a lax supervisor, right? I mean, that's about having some special knowledge or some ability to do the work that you're client or customer doesn't have. And that's what he had. That's what he brought to the table. They were looking for someone with trade skills. And as Mr. Del Cagliano, the buildings and grounds manager, testified, I didn't have to tell him how to do anything. You're hiring a skilled tradesman who might be an independent contractor, might be an employee. And then the question here is, let's look at, and this is what the test calls for, the totality of the circumstances, the circumstances of the whole activity. And what that brings into play, aside from the W-9 and acknowledgment form and the way the parties operated for three years, which was treating him as an independent contractor, what that brings into play is how did Mr. Cornelius treat it? And the way he treated it was that he was an independent contractor running a finished providing services that happened to be at Rollins Ranches during this period of time, these three years, and for which he took extraordinary tax deductions. Yeah, he may have a problem with the IRS, right? But it goes to the economic reality of the situation. Certainly he may have a problem with the IRS. That's not my concern here. But it goes to the question of the economic reality of the relationship between these parties. And some evidence came out during the trial that also goes to the point of that he was given the opportunity on multiple occasions to be converted to an employee status and declined to. And on the last occasion of that, when Travis, this is Travis Waite, his last buildings and grounds manager testified to, his explanation for not doing that was taxes. That's the reality of our situation. Well, but the reality is also that, yes, perhaps they didn't have to tell him how to do something, but they did always tell him what to do. They provided him with the tools. They set hours of work. And again, and he did other non-carpentry activities. So I think a lot of your comments about the tax go to the role that he played in the violation, but it doesn't really speak to the fact that the record shows it was very reasonable to conclude he was an employee. Well, on the tool point, he deducted over $11,000 for tools and depreciated three vehicles, bought a golf cart and a generator, all as a part of this independent contractor business. So it is not a situation, certainly there's equipment, just like an independent contractor carpenter comes in to work on a project, the general contractor might provide a scissor lift to lift stuff up onto the roof. But the independent contractor who's doing the roofing work is still an independent contractor. And this situation is no different than that. He made substantial investment, if you were to believe his tax returns, in tools, which he used, including the vehicles, which he claims exclusive business use, again, at Rollins Ranches for those three years. There are employees who have their own tools, right? Hammer and saw, yes. We're talking about substantial tools here.  That person may want to use his or her own knives, cutlery, et cetera, chosen that they're comfortable with or whatever. So again, it's a fact in your favor, but you've got a tough standard. I understand, Your Honor. The key point that goes to this is whether that evidence that he offers, which is this post-employment claim, post-engagement claim, that he was required, for example, to sign the forms where he acknowledged independent contractor status, came only in this litigation after the engagement had expired. And our position is, and I believe it falls into this category under the Mamani case, which describes the judgment of matter-of-law standard, as the merest scintilla of evidence. His post-engagement testimony is that, that it's simply that, and that under the economic reality, that's the case. Even if he is, even if the jury could find that he was an employee, the imperi delecti, equitable defense goes to it, and goes to the jury awarding him over $10,000 in income. It's our position that the imperi delecti, equitable defense, raised by the court at a proper time, bars him from receiving that $10,900. Why didn't the jury properly parcel it out? It's an equitable doctrine. It gave him what it thought he was entitled to on the FLSA side, and gave your client some money on some of the claims it made in the counterclaim. It's an equitable defense that goes to the judge, not the jury. And they did not hear that. It was raised properly, we contend, after trial as an equitable defense, much like the liquidated damages issue, and should have barred his receipt of that $10,700. If it's equitable, is it discretionary? We believe it's both an abusive discretion, and as a matter of law, the court should have granted our relief we sought, barring that damage. I see my time is about to run up, Your Honor. That's okay, you can wrap up. The last two points that I would raise, that were raised in our brief, and I think adequately addressed there, go to the question of, even if you get past those two hurdles, what's the damage, given the fact that Judge Marra erred in his instructions on both a secondary ag exemption and how you calculate damages in FLSA cases, after the Supreme Court's decision in 2018, in the Encino Motor Cars case. If you look at that, what should this court do? Our position is, even if you get past those first two hurdles, this is an appropriate case for remitter, down to what the evidence shows. Which was? It's less than $2,000, which was an exhibit, I believe it was a defense exhibit four, which Mr. Cornelius, in his very detailed L&E forms, claimed to have worked on Rollins family housing on the farm, over 40 hours in work weeks. The number comes out to less than $2,000. Instead of 10-9, it's $2,000, if we get to that point. Thank you, Your Honor. Thank you very much. You've saved your time for rebuttal. Ms. Bober? Good morning, Your Honors. May it please the Court, Samara Bober for Appellee Cross Appellant, Charles Cornelius. I'm here with my co-counsel on appeals, Sylvia Perez King. There are many issues raised in the party's briefs, but I'd like to start by taking a big picture view of this case. On one side, you have Mr. Cornelius, who left school in the ninth grade due to reading difficulties and became a maintenance worker. For over three years, his sole source of income and only work was for Rollins Ranches. On the other side, you have Rollins Ranches, a company that uses 50,000 acres of multi-purpose, non-contiguous land in Florida. Under Rollins' limitlessly broad definition of the secondary agriculture, it wants to housing, family vacation homes, compounds that the Rollins family would use to host parties, entertain family and friends, and then enjoy bird hunting, work on a dog kennel. I can only speak for myself. I think that there was sufficient evidence in the record to support a finding that he was an employee. My concern is his behavior related to the tax returns and what he alleged that he was entitled to claim for purposes of tax benefits. How can you explain that other than the fact of knowing deception in terms of his presentation to the government? Well, we're here on an FLSA claim. I would say that that's a separate issue. What he did on his taxes, I would contend, is irrelevant to the issue of whether he was an employee and whether he's entitled to damages, the overtime damages, or liquidated damages. The FLSA does not recognize or the Eleventh Circuit has not recognized equitable defenses to liquidated damages or to overtime, and I rely on the Bailey versus Title Max case. If the court were thinking about considering an equitable defense, then in LaMonica, the LaMonica case says you have to go through that two-step process. First, you have to look at what was the plaintiff substantially equally responsible for the violation alleged, and defining the violation is very important. The violation is the failure to pay overtime. For example, what might satisfy that is if a plaintiff refused to be paid overtime, which I wouldn't think that . . . I think just to give them the benefit of the doubt, it seems like their argument is that your client effectively tricked them into not paying him overtime by agreeing to be characterized as an independent contractor by telling everybody he was an independent contractor, including the federal government, and so what are they supposed to do if your client is saying, I'm an independent contractor? Isn't it unfair to then say, well, you should have paid him overtime anyway? I think that's their argument. Yes, and I think that Congress has made a policy decision that that type of argument is not going to be recognized. The FLSA was passed to interfere with certain private contracts because of the unbalanced power dynamics in the employer and employee relationship, and there's a Supreme Court case law that says that the FLSA applies even to an employee who would decline the FLSA's protection. Intent of the parties, representations on tax returns, those are not factors in the economic realities test, and you would have to go through that two-part test for imperio delacto. You have to look at whether the plaintiff is responsible for the violation. It's not reasonable for an employer to rely on an employee's definition of whether he is or is not an employee. That would be a waiver argument. Given all the evidence in the record though, and my initial review of the evidence indicates to me that there was probably enough evidence to support a verdict in Mr. Cornelius' favor on the FLSA claim when you view the evidence in the light most favorable to him, but given the contrary evidence in the record, the things that Judge Abudu and Judge Brasher and your opponent have mentioned, why did the district court err in not awarding liquidated damages on your cross appeal? Yes, Your Honor. I mean, there seems to be a fair amount of evidence that at the very least permitted Judge Marra to conclude that there was good faith on the part of Rollins given all of the varied circumstances and declining to award liquidated damages. Why do you think that was error? Because the conduct that the court considered, the employee conduct, was not sufficient. It's not relevant or sufficient to establish good faith. In the conduct, we're talking about the agreement to be treated as an independent contractor. It's not a reasonable basis for an employee, for an FSA to determine FSA employee status because that would be a waiver argument. It's not the same thing. The waiver argument means they win and you lose on the FLSA claim and that's not the way things shook out. I'm wondering why a judge in Judge Marra's position couldn't think, you know, you're right, Mr. Cornelius, the fact that you find these agreements doesn't mean that you waived your FLSA rights. The issue goes to a jury and we'll see what the jury decides, but that for not awarding liquidated damages. Those two things don't seem inconsistent to me on this record. I think the first part of the test is whether it meets the subjective good faith and objective reasonableness. And I don't think any of the evidence of Mr. Cornelius' conduct was proper evidence for that. Why could Rollins not think, let's start with subjective. Why couldn't Rollins think subjectively given its dealings with Mr. Cornelius that he was an independent contractor? Because an employer cannot rely on an employee's agreement to be an independent contractor. In terms of pretermitting an FLSA claim, I agree. But you can have a judgment that is reasonable and yet erroneous at the end of the day. People make mistakes all the time. And so I take your point that having Mr. Cornelius sign these agreements doesn't eliminate his ability to recover under the FLSA, but you seem to think that they don't go to the issue of good faith either? Yes, Your Honor, because all these arguments regarding conduct, to me, appear to be really equitable arguments. And the FLSA does not, the FLSA recognizes only legal relief. The court has said that in LaMonica and Title Max. And I think when you start taking in employee conduct, it's really whether you put that label on it, it's really an equitable argument that's not permitted. But it's not just employee conduct. They gave him the papers to sign. They drew up the papers. It's not as if he did it on his own. It's not just employee-centered. They gave him the papers that said you are an independent contractor. You agree to be such. And there's also some evidence in the record. Mr. Rigorich, I think, alluded to it a little bit during his argument that at some point he was asked about the possibility of becoming an employee. Was he not? There was evidence of that, disputed evidence, but there was evidence that he declined. But there is also case law. What did he say about that opportunity at trial? He said that his testimony was that he asked to be an employee and their testimony is that they asked him. Okay, so whether he asked or they asked, he knew or thought that he was something else at some point. Doesn't that go to at least subjective belief that he was an independent contractor? When you're talking about the subjective belief, it's not that it's the subjective belief that Rollins Ranchers was complying with the FLSA. Because he was an independent contractor. But the definition for an independent contractor is decided by law and not the intent of the parties. And, Tony, there's a case. For FLSA purposes, you're absolutely right, but that doesn't, you seem to be suggesting, and if I have your position wrong, just correct me. But you seem to be suggesting that once you find FLSA liability for an employer's failure to pay overtime, you have to find and have to award liquidated damages because the employer violated the FLSA. But that doesn't seem to be the case because you've got the good faith provision that says every once in a while, you don't award liquidated damages. Well, liquidated damages generally should be awarded. They're compensatory in nature, but not in all cases. For example, if you have a case where maybe the law is, there's a chain, a law clarified later on, or you got advice of counsel, something like that, then you have a defense. Then you may, depending on the, you may have a defense to liquidated damages. But in the first place, the employer needs to prove the legal standard for liquidated damages. Only after that, only after good faith is proven, the good faith defense, then the court has some discretion on whether to award the full amount or less. What standard of review do we use for a district judge's employment of the good faith provision? The standard is de novo as to questions of law and for clear error as to questions of fact. The abuse of discretion standard only applies after there's a finding that an employer established good faith. He did make that finding here. Did he not? Didn't Judge Morrow make that finding? He did make that finding, but there's two parts to his finding. The first part is whether good faith is established. I think for that part of the finding, the court would review it de novo as to questions. Pardon? Why is that de novo? If you're dealing with subjective reasonableness and subjective belief and then objective reasonableness, that seems like almost a tort concept. Why would that be a legal finding as opposed to a factual one or at the very least a mixed question of law and fact? I think it is a mixed question of law and fact. The standards that I just cited was set forth in the Dybok case and with respect to the de novo and clear error and the standard with respect to applying abuse of discretion, that applies only after there's a finding of good faith and that's in the Rodriguez versus Farm Store case. I think there's two standards of the review. I'm hoping that we don't get to the second part, that the court finds that the employer did not approve the good faith defense. You want to address your second argument in the cross appeal? Yes, Your Honor. You don't have to. Whatever either side has raised in their briefs is, of course, preserved. You use your time as you see fit, but I know you've got another issue in your cross appeal. Yes, Your Honor. The main issue of my cross was the equitable damages in the counterclaim. Was there any evidence in the record, and I recognize you're not responsible for the tax implications of his behavior, but I do think it's relevant for purposes of the good faith standard. Was there any evidence that his representation in his tax returns was an honest mistake, that he didn't understand what he was asserting there? Or, indeed, as I'm reading the record, is it true to say that he intentionally misrepresented his status? I think what the record reflects is that the Rollins ranches classified him as an independent contractor, and then he filed tax returns as an independent contractor in accordance with that classification and with the assistance of his ex-wife and his tax preparer and took deductions that he was advised to take. So, I mean, I wouldn't classify. I think with respect to representing himself as an independent contractor, it started with the misclassification by Rollins ranches, and there was evidence that the person who made the ultimate decision was Randall Rollins, or Gary Rollins. He was the person who ultimately decided that that is how Mr. Cornelius would be classified. So your position is that Rollins Ranch got it wrong from the beginning, your client in good faith relied on that, and therefore there should be no inference that he deceived the federal government in terms of the representation of his status. I mean, I'm not a tax attorney, but essentially, yes, that he prepared his taxes in accordance to the classification that he was labeled. All right, Ms. Bober, thank you very much. Thank you, Your Honors. The points I would like to make, Your Honor, Your Court, really go to the $10,903.63 that the jury said Mr. Cornelius was owed as FLSA overtime damages, and the first point of that is the imperi delecti point, which was correct. You know, you want to get below the $10,000  and if you get that, boy, you've hit the proverbial home run. Well, we're already under the offer of judgment, Your Honor. No, you're not. Well, if you take into account tax consequences and the counterclaims. That's not the way the offer of judgment statute works in Florida. It's the federal statute, Your Honor. Or the federal statute. You don't get to play tax man. You figure out what the judgment was for the plaintiff, and then you look at what the offer of judgment was, but you don't get to make deductions to figure out what the net of the judgment was. We believe the case law is clear that that's the case, but in any event. Have you moved for any relief like that in the district court? Yes, we raised it in our imperi delecti defense. No, no, that's a very different argument. No, depending on what happens on remand, that issue may well come up. Right, because you need the number to go under $10,000. It's okay to admit it. If we accept your description of what the number is, that it's solely what the plaintiff claimed and got in response to the FLSA damages claim, I would agree. It's over $10,000. My observation is only, Mr. Rigorich, that if you thought, if you or your client thought that it was the net of the judgment and not the judgment itself that triggered the offer of judgment protections, you would have moved for relief in the district court immediately. You haven't done so. Well, we did. That's why you want remittitor. Well, that's one reason we want remittitor, but we did raise that in the judge-withheld ruling on our motion for a proceeding on cost, which implicates those points. Can I ask you a question on that? Yes. On the imperi delecto, so opposing counsel cites Bailey v. Titlemax, where we rejected an equitable defense to an overtime claim, an FLSA claim, based on the idea the defense was that the employee underreported the employee's hours, and we said, as long as there was a reason to believe that the employer knew that that underreporting was going on, then you couldn't raise an equitable defense based on the employee's knowing underreporting of hours. That's the opposite of our situation. Okay, explain. Here we have overreporting of hours, which the jury found in awarding us. Here you're not talking about the number of hours. I mean, here you're talking about the status of the person, and I guess the analogy that I think she's implicitly drawing from that is that if we said that if the employer had a reason to know that the employee was underreporting hours, no equitable defense, here I think her argument would be if the employer had reason to know that the independent contractor status was not the right status, then you wouldn't have this equitable defense. And we had no reason to believe that, as Judge Mara found in denying liquidated damages, finding that we had good faith, relying upon what Mr. Cornelius said and the fact that you can have independent contractors come in and do work on a ranch. The key thing in the imperi-delecta defense is whether Mr. Cornelius participated in the fact that's at issue here. And his signing of those documents, including the W-9 when he started, as demonstrated by his then doing tax returns on that and claiming extraordinary deductions, showed that he participated in the wrong, if there is a wrong, such that he should not be awarded FLSA damages. But if you have an employer who seeks to classify an employee as an independent contractor, when that person really is not an independent contractor, has him or her sign the forms, and then the person takes tax actions which are consistent with the label of independent contractor, do you think the imperi-delecta defense applies? I think on the totality of circumstances here, his participation under the Bailey case, which were really discussed in Bailey and in LaMonica, goes to the point that on this situation, on these facts, it applies and takes the $10,900 in FLSA damages to zero. The second point is why remitter is appropriate. Remitter is appropriate because Judge Mera aired at the invitation of plaintiff's counsel in two instructions that he gave. One in basically obviating the secondary agriculture defense and then in describing damages inconsistently with what our facts are since Encino Motor Cars. Our facts are that we have very detailed records. Admissions by Mr. Cornelius claims, we don't know that they're accurate. We know to some degree they're not. That's why we got a counterclaim judgment that established what he was doing over 40 hours in a work week. Some of it was purely secondary ag. There's no question about that or should be. You know, repairing an employee's house roof, repairing the house on a maintenance shed, that's secondary ag work and there should be no question about that. But the instructions took that away from the court. Why is that necessarily true? Because it fits within the definition of secondary agriculture. There's no case law you've cited that stands for that broader proposition. Well, what stands for the proposition is that the secondary ag exemption is broad if it goes to work that's performed on a farm. We recognize... No, but it's an open issue exactly what is covered and not covered under that exception, even as you think it should be defined. And that was taken away from the jury by the jury instructions, that determination, that factual... That's our problem with that. That's why remitter is appropriate and why remitter would be appropriate to take it down to the work that arguably would be non-exempt under the secondary ag, which is the work on the Rollins family's houses and guest properties, which is the $1,970 issue, which we put into evidence for that reason and which the jury did not award. So what we've got is, in order to fix the erroneous instructions, we can do one of two things. We can do a remitter down to what the evidence a jury could find was not secondary ag, which was the work on the Rollins family houses, and do a remitter down to that number, which is less than $2,000. The alternative is a new trial. And if we have a new trial... If that happens, does he get liquidated damages on the $2,000? No, the liquidated damages question has already been decided. Oh, no? Unless that's reversed. Oh, no, no, no. You want the whole Pandora's box open with remitter. If we're looking at damages,  if the damages are now remitted in scope? I would acknowledge, Your Honor, that issue could go back to Judge Morrow. I don't think it should, but it could. But the remitter... His ruling might be, if the people who own Rollins Ranch were getting him to do work on their personal property and residences for their benefit and not for the benefit of the farm or the ranch, they lacked a good faith basis to think he was an independent contractor. Therefore, no good faith. Therefore, liquidated damages. There would be something to that if the Rollins family weren't paying Rollins Ranch's LLC for the work that both Mr. Cornelius and others were doing. That was a source of income for Rollins Ranch's LLC. And when he did work on that property, the Rollins family paid for it to Rollins ROC, LLC, which they own. Okay, we understand you. We've taken you way over your time, Mr. Rowe. Thank you, Your Honor. Thank you both very much. Thank you.